WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-17-0680-PHX-GMS |
| Plaintiff, | **DETENTION ORDER** |
| vs. | |
| Yomtov Scott Menaged, | |
| Defendant. | |

The Government requests Defendant be detained as a flight risk and an economic danger to the community. The Court heard argument from the parties on June 6, 2016. The Court has also considered a memorandum/motion, exhibits, and proffers of the parties. The Court finds detention as a flight risk is required under the Bail Reform Act. The Court does not find Defendant is a danger to the community.

## I. Factual and Procedural Background

Defendant, age 40, is a United States citizen who has lived in the community for the past 15 years. Prior to 2002, he lived in New York. He has two children, ages 15 and 2. He reports that he is in the midst of a divorce, and plans to move from his current home. He has no criminal history. There is no evidence of alcohol or drug abuse. He has three siblings in Arizona, with whom he has weekly contact. Defendant's ex-wife, sister, and mother submitted letters to the Court that strongly speak of him as a loving father and family man. (Exhibits 1-3.) Defendant's family members were present in court for the

detention hearing. Defendant maintains close contact with his father, Joseph Menaged.

Defendant was the owner and operator of furniture store businesses, which include American Furniture and Furniture King. He was also involved in significant real-estate investment in the Phoenix area. According to the declaration of Special Agent Byron Anderton, Defendant used at least two different Social Security Numbers and two separate dates of birth to conduct business transactions. (Doc. 31-1 at 3.) He had signatory authority over at least 28 separate bank accounts from five financial institutions. (*Id.* at 6.) Between January 2013 through June 2016, Defendant obtained loans related to his businesses totaling approximately $734,484,440.67. (*Id.*) On April 20, 2016, Defendant filed for Chapter 7 bankruptcy in the District of Arizona. As of April 4, 2017, approximately $132,241,306.00 in claims were registered against Defendant. (*Id.*)

According to Special Agent Anderton, Defendant "wired or electronically transferred millions of dollars to bank accounts in the names of friends and family members." (*Id.* at 9.) Between "2015 and the present, Menaged transferred approximately $1,033,808.28 to a Bank United account held in the name of his father." (*Id.*) On July 24, 2016, the balance of that account was approximately $2,403,673.15. (*Id.*) Defendant's father is a United States citizen born in Israel. One week after Defendant's arrest, Defendant's father traveled to Israel. Defendant proffers that Joseph Menaged may have traveled to Israel to supervise a real estate sale.

According to Special Agent Anderton, Defendant was recorded telling another person that Defendant had $30,000,000 in an offshore account. (*Id.* at 7.) The government provided no evidence of an offshore account managed by Defendant. From 2014 to 2017, gambling receipts from Wild Horse Pass Casino in Chandler reflect that Defendant and his wife cashed out approximately $1,467,014.000 in gambling funds. (*Id.* at 9.) Defendant reported to Pretrial Services that he currently has $2,000 in cash but no checking or savings account. (Doc. 11 at 3.) He reports that he has $250,000 in credit card debt and a $150,000 tax lean for unpaid taxes. (*Id.*)

The Indictment alleges Defendant was involved in a conspiracy to defraud

resulting in losses of "at least $2,112,405.97." (Doc. 3 at 13.) Defendant is charged in all 24 counts of the Indictment. (*Id*.)

**II.  The Bail Reform Act**

The Government seeks the detention of Defendant on the grounds that he is 1) a serious flight risk and no release condition or combination of conditions exist that would reasonably assure his appearance at future court proceedings if released, and 2) an economic danger to the community. After considering the memoranda, exhibits, proffers, argument, and all of the factors set forth in 18 U.S.C. § 3142(g), the Court finds that the Government has proven by a preponderance of the evidence that Defendant is a serious flight risk and no combination of conditions exist that would reasonably assure his appearance at future court proceedings.

    **a.  Standard of Review**

The Bail Reform Act, 18 U.S.C. §§ 3141-3150, mandates the release of a person pending trial unless the court "[f]inds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008) (quoting 18 U.S.C. § 3142(e)). This Court engages in a two-step inquiry before ordering a defendant either be released or detained pending trial. First, the Court must determine whether the defendant presents a "serious risk that [the defendant] will flee," if released from custody. 18 U.S.C. § 3142(f)(2)(A)). Second, if the defendant is likely to flee, the Court must determine whether some set of conditions would sufficiently vitiate that risk. 18 U.S.C. § 3142(g). The government bears the burden of showing by a preponderance of the evidence that the defendant poses a flight risk. *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991).

In determining whether release conditions exist that would reasonably assure a defendant's appearance, Section 3142(g) requires a district court to consider the following factors:

      (1) the nature and circumstances of the offense charged,

3

> including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including--
>
> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>
> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. . . .

18 U.S.C. § 3142(g). "Only in rare circumstances should release be denied," and any "[d]oubts regarding the propriety of release should be resolved in favor of the defendant." *United States v. Motamedi*, 767 F.2d 1403, 1405 (9th Cir. 1985).

### b. Risk of Flight

The Court finds that Defendant is a serious flight risk if he is released. Defendant is a sophisticated businessman who is experienced with operating financial accounts and managing financial transactions. He has utilized at least one fraudulent social security number and a false identity to establish financial accounts. The Indictment details significant fraudulent activity perpetrated since September 8, 2015. Defendant is currently in bankruptcy proceedings. He faces significant financial and personal turmoil.

The evidence portrays two different sides of Defendant. On the one hand, he is a loving father, supportive sibling, and a previously-successful business owner. He is a person with clear ties to the community and no prior criminal record. On the other hand, the Indictment and Declaration detail significant and ongoing fraud since September 8, 2015. Defendant was allegedly involved in fraud resulting in losses exceeding two million dollars. Defendant was the principal actor in the alleged conspiracy. Defendant's

personal finances are in complete ruin. He has $250,000 in credit card debt and reports he has no available finances.

But the evidence also shows Defendant had access to significant amounts of cash since 2014. Since 2014, he and his wife cashed out almost $1.5 million at one casino alone. He transferred millions of dollars to friends and relatives, one of whom was his father who had a bank account containing $2.4 million in July of 2016.

The Court finds that Defendant's financial sophistication, prior access to millions of dollars in cash, current financial turmoil, and fraudulent activity demonstrate he is a flight risk.

### c. Factors to Consider If Conditions Exist to Reasonably Assure Appearance

#### i. Nature and Circumstances of the Crimes Charged

The Superseding Indictment and Declaration of Special Agent Anderton (Doc. 31-1) allege sophisticated criminal conduct based upon Defendant's fraud. The Government alleges substantial monetary loss in excess of two million dollars. (Doc. 3.) The Indictment alleges Defendant is the principle actor in the scheme that began in 2015. (*Id*.) In sum, the nature of the offenses is serious, and the Indictment alleges significant harm to the community as a result of Defendant's financial fraud.

Defendant is presumed innocent, but the possible punishment in a case involving 24 counts and potentially over $2,000,000 of loss is significant. *See United States v. Townsend*, 897 F.2d 989, 995 (9th Cir. 1990) ("[T]he defendants are charged with multiple counts, and it is reasonable, from their perspective, to look at the potential maximum sentences they face if they were found guilty on each count and sentenced consecutively on each count . . . Facing the much graver penalties possible under the present indictment, the defendants have an even greater incentive to consider flight."). The Court finds that in light of the serious nature and circumstances of the crimes charged, the first § 3142(g) factor favors the Government's detention request.

#### ii. Weight of the Evidence Against Defendant

Of the four detention factors a court must consider, the weight of the evidence is the least important of the factors. *Motamedi*, 767 F.2d at 1407. The Court is also mindful that, here, Defendant has had minimal time to review the evidence compared to the Government, who has investigated this case for a considerable amount of time. Nonetheless, the weight of the evidence favors the Government. The Declaration of Special Agent Anderton (Doc. 31-1) outlines the investigation of Defendant's conduct. According to the Declaration, the evidence details a consistent pattern of fraud related to Defendant's conduct. The Court finds the second § 3142(g) factor favors the Government, and no set of release conditions would reasonably assure Defendant's appearance at trial or other court proceedings if he was released.

### iii. History and Characteristics of Defendant

As reflected above, Defendant has no prior convictions and there is no evidence of substance abuse. The Court does not find that Defendant's sporadic international travel with family contributes to his risk of flight. Defendant's travel is not noteworthy. Prior to the dates alleged in the Indictment, there is no evidence before the Court that Defendant was anything other than a successful businessman.

But Defendant's recent history is troubling to the Court. Defendant has suffered serious personal and business financial setbacks. He is presently in bankruptcy proceedings. The casino records from Wild Horse Pass Casino reflect extravagant gambling over the past several years. Defendant is mired in substantial credit card and tax debt. He is in the midst of a divorce. The gravamen of the Indictment and Declaration is that Defendant has lied and defrauded others to acquire over two million dollars. In short, Defendant's recent history is in stark contrast to his previous conduct (as known to the Court at this time). Defendant's recent history is significant enough to establish that this factor favors detention.[1]

---

[1] The Court makes no findings regarding Defendant's conduct in bankruptcy proceedings. The Court was not presented with documents from his bankruptcy matter and cannot determine if Defendant was honest with the Bankruptcy Court. Further, whether Defendant has followed all of the orders of the Court in that matter is unknown.

#### iv. Nature and Seriousness of the Danger to Others if Defendant Were Released

This factor does not favor detention. Defendant is not a physical danger to anyone in the community. Defendant may be an economic danger to the community, which the Court may consider. *See United States v. Reynolds*, 956 F.2d 192 (9th Cir. 1992) (defendant convicted of mail fraud under 18 U.S.C. § 1341 posed an economic or pecuniary danger to the community). But Defendant was the subject of a substantial investigation by federal agents. The charges in the Indictment are public. He is in bankruptcy proceedings. As of April 4, 2017, approximately $132, 241, 306.00 in claims were registered against Defendant. The Court assumes his financial status is well known to potential creditors. Defendant may be able to utilize false social security numbers and names to procure additional money, but that likelihood seems remote. Defendant's alleged fraudulent conduct occurred in relation to his businesses. Defendant's scheme has been exposed. While Defendant may be an economic danger, that fact is significantly diminished by the public nature of the investigation and this case.

In conclusion, based upon a balancing of the four detention factors, and the evidence and proffers presented, the Court finds that the Government has sustained its burden of proof by a preponderance of the evidence that Defendant is a serious flight risk.

### d. Conditions of Release

The Court has considered whether alternatives to custody would suffice in this case. The Court considered GPS monitoring but finds it unsuitable to ameliorate Defendant's risk of flight. If Defendant intended to flee, the GPS device could easily be removed. The device would not prevent Defendant from traveling to another country. A GPS device would not prevent him from fleeing, and thus does not ameliorate his risk of flight.

## III. Conclusion

The Court concludes that there is no combination of release conditions that would reasonably assure Defendant's appearance as required. Defendant has used a false name

and false social security number to establish financial accounts. The Court has considered evidence of Defendant's fraudulent conduct.[2] Defendant transferred millions of dollars to friends and family members, including his father who has recently traveled to Israel. Defendant now has few financial ties to the community. The serious nature of the charges and the evidence before the Court demonstrate Defendant is a serious flight risk. Therefore, the Court finds that the Government has sustained its burden of proof by a preponderance of the evidence that Defendant is a serious flight risk and that no condition or combination of release conditions would reasonably assure his appearance at future court proceedings if he were he released.

Accordingly,

**IT IS ORDERED** detaining Defendant as a flight risk.

**IT IS FURTHER ORDERED** that the Government's Motion for Detention (Doc. 30) is granted.

Dated this 12th day of June, 2017.

Honorable John Z. Boyle
United States Magistrate Judge

---

[2] As noted previously, the Court considers the evidence in relation to the Bail Reform Act factors, and reaffirms the presumption of Defendant's innocence to the filed charges.