1
2
3
4
5
6

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-17-00680-001-PHX-GMS |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Yomtov Scott Menaged, | |
| Defendant, | |
| Joseph Menaged, | |
| Claimant. | |

TO THE HONORABLE MURRAY M. SNOW, UNITED STATES DISTRICT JUDGE:

On February 2, 2018, Claimant Joseph Menaged filed a Verified Petition for Hearing on Preliminary Order of Forfeiture and Claim of Exemption from Forfeiture ("Petition"), in which he claims to be the owner of $709,405.40 seized from a bank account held in the name of Joseph Menaged. (Doc. 212.) On February 8, 2018, the presiding Judge Murray M. Snow referred the Verified Petition to Magistrate Judge Michelle H. Burns for review and ruling. (Doc. 215.) On February 16, 2018, the Government filed a Motion to Dismiss Petition Contesting Forfeiture, asserting that Claimant's Petition should be dismissed because it is time-barred, and fails to state a claim (Doc. 222). Claimant has filed a Response, (Doc. 224), and the Government has filed a Reply (Doc. 228).

\\\

**BACKGROUND**

In 2017, Defendant was indicted on 24 counts of wire fraud, aggravated identity theft, and conspiracy to defraud. (Doc. 3.) A forfeiture allegation, pursuant to 18 U.S.C. § 981 and 21 U.S.C. §§853, 881, and 28 U.S.C. § 246(c), was also included in the Indictment. (Id.) Defendant pled guilty to Count 1, Conspiracy to Commit Bank Fraud, Count 10, Aggravated Identify Theft, and an Information charging Defendant with Money Laundering Conspiracy. (Docs. 134, 135.) In his plea agreement, Defendant also agreed to certain forfeiture provisions. (Doc. 135 at 7-8.)

On October 23, 2017, the Government filed a Motion for a Preliminary Order of Forfeiture, moving to forfeit the $709,405,40 (the "seized funds") at issue here. (Doc. 142.) On November 27, 2017, the Court entered a Preliminary Order of Forfeiture, determining that all of seized funds are proceeds traceable to Defendant's criminal conduct, and therefore subject to forfeiture. (Doc. 173.) In its Order, the Court made the following findings:

1. Defendant defrauded DenSco Investment Corporation out of tens of millions of dollars. Defendant, through Arizona Home Foreclosures, transferred $709,405.40 of those fraud proceeds to petitioner's bank account; and

2. The $709,405.40 that the government seized from petitioner's bank account are proceeds traceable to defendant's criminal conduct, they are property involved in defendant's money laundering offenses, and they are proceeds obtained directly or indirectly as result of defendant's bank fraud; and

3. The $709,405.40 seized from Account #0927 is subject to forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(A) and (C), 982(a)(1)(A) and 982(a)(2), and 28 U.S.C. § 2461.

(Doc. 173.)

The Government served Claimant with notice of the forfeiture and the preliminary order of forfeiture on December 28, 2017, via certified and first class mail. (Doc. 222, Exh. 2.) The notice was received on January 2, 2018, as evidenced by a signed certified mail receipt at Claimant's address in Miami Beach, Florida. (Id.) On February 2, 2018, Claimant filed his Petition, in which he asserts that in December 2011, he lent Defendant

(his son) $5,500,000.00, and that because the seized funds are repayment on the loan, they should be exempt from forfeiture.  (Doc. 212.)  He claims that he is an "innocent third-party," and has a "valid security interest in the property."  (Id. at 2.)  Claimant also asserts that he had "no involvement in or knowledge of Defendant's criminal activity," and that the money was loaned to Defendant prior to his criminal conduct.  (Id.)

The Government moves, pursuant to Fed. R. Crim. P. 32.2(c)(1)(A), to dismiss Claimant's petition, asserting that (1) it is time barred, and (2) fails to state a claim as the Government's interest in the seized funds has priority as a matter of law.  (Doc. 222.)

## STANDARD ON MOTION TO DISMISS

Rule 32.2(c), Fed. R. Crim. P., authorizes dismissal of a third-party claim for failure to state a claim.  In analyzing a motion to dismiss in a criminal forfeiture proceeding, the court applies the same standard it would in reviewing a motion to dismiss a complaint pursuant to Rule 12(b) of the Federal Rules of Civil Procedure.  See United States v. Catala, 870 F.3d 6, 8 (1st Cir. 2017).  As such, "a third-party petitioner under section 852(n) must plead 'enough facts to state a claim to relief that is plausible on its face.'"  Id. at 9 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)).

## TIMELINESS

The record establishes that the Government sent the notice of forfeiture via certified mail to Claimant's home address, and an unknown individual signed the receipt on January 2, 2018.  Claimant does not dispute this, but contends that he did not actually receive the notice until one day later, on the 3rd of January.  (Doc. 224, Exh. 1, Affidavit of Claimant.)  He asserts that he lives in a "multi-family condominium," that mail is delivered to an attendant at the front desk in the lobby of the building, and that the mail is then "delivered to the respective unit when its tenants are present."  (Id.)  Claimant avows that he did not sign the receipt, but is notably silent on identifying who did, and who it was that delivered the notice to him the next day.  (Id.)

\\\

\\\

A third party must file a petition challenging forfeiture within 30 days of the final publication of notice of forfeiture, or the receipt of actual notice, whichever is earlier. See 21 U.S.C. § 853(n)(2).  Fed. R. Crim. P. 32.2(b)(6) provides that notice of forfeiture may be sent by any means in accordance with civil rule G(4)(b)(iii)-(v), Supplemental Rules for Admiralty or Maritime and Asset Forfeiture Claims ("the Rules").  The Rules provide that "the notice must be sent by means reasonably calculated to reach the potential claimant." Rule G(4)(b)(iii)(A).   "Due process is satisfied where notice is 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" United States v. Muckle, 709 F.Supp.2d 1371, 1373 (M.D. Ga. 2010), aff'd sub. nom. United States v. Davenport, 668 F.3d 1316 (11th Cir. 2012) (citing Dusenbery v. United States, 534 U.S. 161, 168 (2002)).

Notice may be sent "to the last address that [the potential claimant] gave to the agency that seized the property."  Rule G(4)(b)(iii)(B). The Government asserts that, as valid service was effectuated on January 2, 2018, Claimant's Petition should have been filed on or before February 1, 2018.  As it was not filed until February 2, 2018, Claimant's Petition should be dismissed as untimely. See United States v. Marion, 562 F.3d 1330, 1341 (11th Cir. 2009) (claimant's petition dismissed filed over three months after receiving notice and was therefore dismissed as untimely).

Although the Rules may provide that notice is effectuated on the date of proper mail service, the governing statute provides that the 30-day time period begins to run on the day of actual receipt.  See 21 U.S.C. § 853(n)(2).  The Government cites, in support of its argument, United States v. Marion, 562 F.3d 1330 (11th Cir. 2009); Muckle, 709 F. Supp. 2d 1371, and, United States v. Lester, No. 06-20151-JWL, 2008 WL 732897, *3 (D. Kan. 2008).  None of these cases involve facts that resolve an apparent tension between the date of proper service under the Rules, and the reference to actual notice in the statute.  As such, the Court does not find that the Government has established that Claimant's Petition is untimely by one day.

## MERITS

The Government asserts that, because of the relation-back doctrine, its interest in the seized funds is superior to Claimant's interest. The relation back doctrine is codified in 21 U.S.C. § 853(c), and provides that:

> All right, title, and interest in property described in subsection (a) of this section vests in the United States upon the commission of the act giving rise to forfeiture under this section.  Any such property that is subsequently transferred to a person other than the defendant may be the subject of a special verdict of forfeiture and thereafter shall be ordered forfeited to the United States, unless the transferee establishes in a hearing pursuant to subsection (n) of this section that he is a bona fide purchaser for value of such property who at the time of purchase was reasonably without cause to believe that the property was subject to forfeiture under this section.

Furthermore, pursuant to subsection (n), to successfully challenge forfeiture, the Claimant has the burden of proving either

> (A) the [claimant] has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the [claimant] rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section; or

> (B) the [claimant] is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under this section.

21 U.S.C. § 853(n)(6).

In his Response, Claimant asserts that the seized funds "vested [in Claimant] at the time funds [] were wired from DenSco Investment Corporation to Defendant's company, Arizona Home Foreclosures."  (Doc. 224 at 3.)  And, "[a]t the time of the individual wires from DenSco, criminal activity had not taken place."  (Id.)  Claimant characterizes the criminal activity as occurring when the misrepresentations were made by Defendant to DenSco, and not at the time the funds were originally delivered.  (Id.)  The only document submitted by Claimant in support of his assertions is a Promissory Note, dated

December 1, 2011, entered into between Claimant (lender) and Arizona Home Foreclosures, LLC ("AHF").  (Doc. 212 1-7.)  The unsecured Note reflects that the Defendant, sole managing member of AHF, borrowed 5 million dollars from Claimant, agreeing to pay back the sum, together with interest, starting in January, 2012, at an agreed upon rate of interest, with payments to be made in the monthly amount of $49,993.99 for the first three years, and in the monthly amount of $56,844.89, for the remaining seven years of the loan.

According to the Declaration of Special Agent Byron Anderton of U.S. Immigration and Customs Enforcement Homeland Security Investigations, Defendant, through AHF "funneled at least $709,405.40 into Account #0927."  (Doc. 222-1 at ¶3.) Defendant was the principal and statutory agent of AHF.  (Id. at ¶4.)  Defendant ultimately pled guilty and was convicted of Conspiracy to Commit Bank Fraud, Aggravated Identity Theft, and Money Laundering Conspiracy.

With respect to the bank fraud and identity theft charges, Defendant admitted that he had submitted false and fraudulent credit applications to Wells Fargo Bank using deceased individuals' personal information, purportedly for loans to purchase furniture, which caused Wells Fargo to deposit payments into the bank account of Defendant's retail store Furniture King.    As a result of this scheme, the loss to the banks totaled $2,112,405.97.  (Doc. 192 at 10.)

With respect to the money laundering conspiracy, Defendant admitted that he, acting through AHF and beginning in January, 2014, defrauded victim hard-money lender DenSco Investment Corporation out of approximately $734,484,440.67.  (Doc. 192 at 11.)  Between February 13, 2015 through October 1, 2015, DenSco wired a total of $133,087,329.85 from its 1st Bank account ending in #5264 to AHF's JP Morgan Chase account ending in #1151, and AHF then wired a total of $709,405.40 to Account #0927. According to Agent Anderton, "[t]he wire transfers into Account #0927 are proceeds of [Defendant]'s fraud scheme, or are traceable to such proceeds, and are property involved in money laundering offenses, or traceable to such property."  (Doc. 222-1, at ¶10.)

Claimant does not dispute any of these facts in his Petition.

The Government has demonstrated that the funds deposited into Account #0927 were proceeds of Defendant's criminal offenses of conviction, and as such they vested immediately in the Government upon commission of the offenses. Furthermore, the Court has already determined that the seized funds "are proceeds traceable to defendant's criminal conduct, they are property involved in defendant's money laundering offenses" and subject to forfeiture.  (Doc. 173.)

The Government asserts that a claimant with a pre-existing interest as a general creditor cannot contest forfeiture of the criminal proceeds, citing United States v. Dempsey, 55 F. Supp. 2d 990, 993 (E.D. Mo. 1998).  As Claimant's promissory note was unsecured, he is an unsecured creditor and "[i]t is well settled that unsecured general creditors do not have any vested or superior right, title, or interest in forfeited assets because general creditors cannot claim an interest in any particular asset." Id. (citations omitted); see also DSI Associates LLC v. U.S. 496 F.3d 175 at 184 (2nd Cir. 2007) (without such a vested or superior right, title or interest, a general creditor "does not meet the statutory requirements for initiating an ancillary proceeding under section 853(n).").

Here, Claimant purportedly loaned Defendant 5 million dollars approximately two years before the commission of the money laundering offense.  Because the purported loan existed before Defendant committed his offenses, as a general creditor, Claimant's petition fails, as "[a] third party cannot have an interest in proceeds that do not yet exist." Catala, 870 F.3d at 10 ("[s]ince proceeds from a crime 'do not precede [the commission of the crime],' the government's interest in proceeds forfeited pursuant to section 853(a)(1) will almost always pre-date that of a third party who is a general creditor.").  The Catala case cited by the Government is instructive analogous.  In that case, the claimant had loaned the defendant money before the defendant had committed the crimes, and before the proceeds were seized by the government.  Finding that the relation-back doctrine prevented the claimant from having an interest in the criminal proceeds, the Court, in conclusion found that:

"[t]his result conforms not only to the letter of the forfeiture statute but also to the policies behind it. After all, if a criminal defendant's forfeited cash could be used to defray his debts to general creditors, the defendant would continue to benefit from his illicit activities. Such a result would be at cross-purposes with the goals of criminal forfeiture, such that 'separating a criminal from his ill-gotten gains' and 'lessen[ing] the economic power' of unlawful activities.

Id. at 11 (citing Honeycutt v. United States, -- U.S. --, 137 S. Ct. 1626, 1631 (2017)).

The Court finds that Claimant's Petition does not state a plausible claim for relief, and will recommend that it be denied and dismissed with prejudice.

**IT IS THEREFORE RECOMMENDED** that the Government's Motion to Dismiss Petition Contesting Forfeiture, (Doc. 222), be granted, and that Claimant's Verified Petition for Hearing on Preliminary Order of Forfeiture and Claim of Exemption from Forfeiture, (Doc. 212), be dismissed with prejudice.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment. The parties shall have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. See 28 U.S.C. § 636(b)(1); Rules 72, 6(a), 6(b), Federal Rules of Civil Procedure. Thereafter, the parties have fourteen days within which to file a response to the objections. Pursuant to Rule 7.2, Local Rules of Civil Procedure for the United States District Court for the District of Arizona, objections to the Report and Recommendation may not exceed seventeen (17) pages in length. Failure timely to file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review. See United States v. Reyna-Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure timely to file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. See Rule 72, Federal Rules of Civil Procedure.

Dated this 12th day of April, 2018.

Honorable Michelle H. Burns
United States Magistrate Judge